YOUNG, J.
The issue presented in this case is the proper scope of the exemption for regulated conduct and transactions under the Michigan Consumer Protection Act (MCPA).[1] The MCPA exempts any “transaction or conduct specifically authorized under laws adminis *206 tered by a regulatory board or officer acting under statutory authority of this state or the United States.”[2] In Smith v Globe Life Ins Co,[3] this Court held that the relevant inquiry “is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.” In Hartman & Eichhorn Bldg Co, Inc v Dailey,[4] the Court of Appeals opined that under the Smith test, licensed residential home builders were exempt from the MCPA; however, the Court ruled against the residential home builders because it believed that it was bound by Forton v Laszar[5] to hold that the residential home builders were subject to the MCPA. We hold that under MCL 445.904(1)(a), residential home builders are exempt from the MCPA because the general transaction of residential home building, including contracting to perform such transaction, is “specifically authorized” by the Michigan Occupational Code (MOC), MCL 339.101 et seq. Therefore, we overrule any holding to the contrary in Forton and Hartman.
FACTS AND PROCEDURAL HISTORY
In December 2000, plaintiffs, Arthur and Beverly Liss (Lisses) and defendant Lewiston-Richards, Inc. (Lewiston-Richards), entered into a contract for the sale and completion of construction of a residential home. Defendant Jason Lewiston (Lewiston), President of Lewiston-Richards, executed the contract on Lewiston-Richards’s behalf. The Lisses allege that Lewiston-Richards did not complete construction on time and that the construction that was completed was *207 not done in a workman-like manner. In 2003, the Lisses filed this action alleging breach of contract, breach of warranty, and other causes of action.[6] Pertinent to this appeal, the Lisses allege that defendants violated the MCPA. Through their counterclaim and answer, defendants asserted that the transaction at issue, residential home building, was exempt from the MCPA. The parties filed cross-motions for summary disposition. The trial court denied defendants’ motion for summary disposition of the MCPA claim. The court held that it was bound to follow Hartman and hold that defendants were subject to the MCPA. Defendants filed an application in the Court of Appeals for leave to appeal from the order denying their motion and an application in this Court for leave to appeal before a decision by the Court of Appeals. This Court granted defendants’ bypass application.[7]
STANDARD OF REVIEW
This Court reviews questions of statutory interpretation de novo.[8] When interpreting a statute, this Court attempts to give effect to the Legislature’s intent by looking at the statutory text, giving meaning to every word, phrase, and clause in the statute and considering both their plain meaning and their context.[9] This Court *208 also reviews a trial court’s decision granting or denying a motion for summary disposition de novo.[10]
ANALYSIS
Under the MCPA, “[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful... .”[11] However, the Legislature included an exemption in MCPA § 4(1)(a) that, relevant to this case, exempts any “transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.”[12] The party claiming the exemption bears the burden of proving its applicability.[13]
This Court first construed the scope of this particular exemption in Attorney General v Diamond Mortgage Co.[14] In Diamond Mortgage, the defendant was a licensed real estate broker who advertised and offered loans to homeowners. The Attorney General brought suit alleging violations of the MCPA. The defendant answered, contending that because it was a licensed real estate broker, its activities were exempt under § 4(1)(a) of the MCPA. This Court disagreed, holding that the defendant’s “real estate broker’s license does not exempt it from the Michigan Consumer Protection *209 Act.”[15] The broker’s license authorized the defendant “to engage in the activities of a real estate broker,” but it did not “specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act, nor transactions that result from that conduct.”[16] Ultimately, this Court held that while, “no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to ‘[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.’ ”[17] Because “a real estate broker’s license is not specific authority for all the conduct and transactions of the [defendant’s mortgage writing] business,” the defendant’s conduct and transactions were not exempt.[18]
This Court again considered the application of the MCPA exemption provision in Smith v Globe Life Ins Co.[19] In Smith, the plaintiff sued the defendant insurance company for breach of contract and violation of the MCPA. With regard to the MCPA exemption, this Court ruled that Diamond Mortgage controlled the disposition of the case and held that “Diamond Mortgage instructs that the focus is on whether the transaction at issue, not the alleged misconduct, is ‘specifically authorized.’ ”[20] *210 Therefore, “the defendant in Diamond Mortgage was not exempt from the MCPA because the transaction at issue, mortgage writing, was not ‘specifically authorized’ under the defendant’s real estate broker’s license.”[21] Analyzing the insurer’s activities in Smith, this Court concluded that “§ 4(1)(a) generally exempts the sale of credit life insurance from the provisions of the MCPA, because such ‘transaction or conduct’ is ‘specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.’ ”[22] What emerges from Diamond Mortgage and Smith is that the relevant inquiry “is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.”[23]
The Court of Appeals has applied this test in other regulated industries. For example, in Kraft v Detroit Entertainment, LLC,[24] the Court held that “the general conduct involved in th[at] case-the operation of slot machines-is regulated and was specifically authorized by the [Michigan Gaming Control Board].” Thus, the plaintiffs MCPA claim regarding slot machines failed because of the § 4(1) (a) exemption. Similarly, in Newton v Bank West[25] the Court held that the defendant federal *211 savings bank’s banking activities were exempt from the MCPA because those activities were authorized by the Michigan Savings Bank Act,[26] as well as by numerous federal statutes and regulations.
In the area of residential home building, the Court of Appeals held in Forton v Laszar,[27] that the definition of “trade or commerce” in the MCPA could be applied to residential home builders.[28] However, as noted by then-Chief Justice CORRIGAN in a statement concurring with this Court’s order denying the builder’s application for leave to appeal, the builder failed to preserve the issue whether § 4(1)(a) exempts residential home building because that conduct or transaction is subject to licensure and regulation under the MOC.[29] Therefore, Forton never squarely addressed the exemption. However, in Hartman & Eichhorn Bldg Co, Inc v Dailey,[30] the Court mistakenly opined that the Forton panel held that the exemption did not apply to building residential homes.[31] *212 The Hartman panel disagreed with the “holding” of Forton and declared a conflict, but the full Court of Appeals declined to convene a conflict panel,[32] and the Hartman panel denied Hartman’s motion for reconsideration.
The Hartman panel’s treatment of Forton was erroneous because Forton never addressed the exemption. As noted, Forton merely found that residential home building fell within the MCPA’s definition of “trade or commerce.” Because the builder did not timely raise the MCPA defense, the Forton panel did not have the opportunity to address the exemption. However, we agree with the Hartman panel’s independent application of the exemption to residential home building.
Applying the Smith test, the relevant inquiry “is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.”[33] This Court has not construed the meaning of “specifically authorized” under the MCPA. “Specific” means “having a special application, bearing, or reference; explicit or definite.”[34] “Au *213 thorize” means “to give authority or formal permission for; sanction.”[35] Thus, the exception requires a general transaction that is “explicitly sanctioned.”
In this case, the general conduct at issue is residential home building. Residential home builders are licensed under the MOC[36] and are regulated by the Residential Builders’ and Maintenance and Alteration Contractors’ Board, which oversees licensing and handles complaints filed against residential builders. Moreover, there is a set of administrative rules promulgated to regulate the licensing procedure.[37] Furthermore, the general transaction at issue in this case, contracting to build a residential home, is “specifically authorized” by law. First, the MOC comprehensively defines a “residential builder” as
a person engaged in the construction of a residential structure or a combination residential and commercial structure who, for a fixed sum, price, fee, percentage, valuable consideration, or other compensation, other than wages for personal labor only, undertakes with another or offers to undertake or purports to have the capacity to undertake with another for the erection, construction, replacement, repair, alteration, or an addition to, subtraction from, improvement, wrecking of, or demolition of, a residential structure or combination residential and commercial structure; a person who manufactures, assembles, constructs, deals in, or distributes a residential or combi *214 nation, residential and commercial structure which is prefabricated, preassembled, precut, packaged, or shell housing; or a person who erects a residential structure or combination residential and commercial structure except for the person’s own use and occupancy on the person’s property.[38]
A residential home builder, by statutory definition, is one who engages in construction activities “for a fixed sum, price, fee, percentage, valuable consideration, or other compensation ....” Therefore, a residential home builder is “specifically authorized” to contract to build homes.[39]
Additionally, there are only a limited number of instances where a non-licensed builder may “engage in the business of or act in the capacity of a residential builder.”[40] *215 The clear import of the statutory scheme is that there are only a few instances where one can engage in the business of a residential home builder without having a license. Therefore, with limited exceptions, contracting to build a residential home is a transaction “specifically authorized” under the MOC, subject to the administration of the Residential Builders’ and Maintenance and Alteration Contractors’ Board.[41]
Thus, the MCPA exemption applies to residential home builders who engage in the type of activities that define a residential home builder, which activities are permitted by the MOC to be performed only by licensed residential home builders. This case is unlike Diamond Mortgage, where the defendants engaged in activity, mortgage writing, that their real estate broker license simply did not permit them to do. Forming an agreement to build a home is the essence of a residential home builder’s activity that is specifically authorized by law.
CONCLUSION
Applying the Smith test, defendants’ “general transaction,” building a residential home, is “specifically authorized” under the MOC and the relevant regulations. Therefore, that transaction is exempt from the MCPA. We reverse the Oakland Circuit Court order to the contrary, as well as overrule any contrary holding in Forton and Hartman, and remand for further proceedings consistent with this opinion.
*216 Taylor, C.J., and Weaver, Corrigan, and Markman, JJ., concurred with YOUNG, J.

 MCL 445.901 et seq.

 MCL 445.904(1)(a).

 460 Mich 446, 465; 597 NW2d 28 (1999).

 266 Mich App 545; 701 NW2d 749 (2005).

 239 Mich App 711; 609 NW2d 850 (2000).

 The Lisses also filed a complaint with the Department of Labor and Economic Growth, Bureau of Commercial Services Enforcement Division. This entity within the Department of Labor and Economic Growth investigates and resolves consumer complaints against residential home builders.

 474 Mich 1133 (2006).

 City of Taylor v Detroit Edison Co, 475 Mich 109, 115; 715 NW2d 28 (2006).

 Shinholster v Annapolis Hosp, 471 Mich 540, 548; 685 NW2d 275 (2004).

 City of Taylor, supra at 115.

 MCL 445.903(1).

 MCL 445.904(1)(a).

 MCL 445.904(4). Thus, § 4(1)(a) provides an affirmative defense, which is waived, unless the party raised it in the party’s first responsive pleading, as originally filed or as amended under MCR 2.118, or motion for summary disposition. MCR 2.111(F)(3); see Rasheed v Chrysler Corp, 445 Mich 109, 131-132; 517 NW2d 19 (1994). Defendants properly raised the exemption in their answer and counterclaim, as well as in their motion for summary disposition.

 414 Mich 603; 327 NW2d 805 (1982).

 Diamond Mortgage, supra at 6X7.

 Id.

 Id. Plaintiff and the dissents contend that an illegal act can never be “specifically authorized” and thus exempt. In focusing on the alleged illegality rather than whether the transaction is authorized, plaintiff and the dissents conspicuously overlook this critical explanation from Diamond Mortgage.

 Id.

 460 Mich 446; 597 NW2d 28 (1999).

 Id. at 464 (emphasis added).

 Id.

 Smith, supra at 465.

 Id. Justice Kelly argues that there is a distinction between the tests articulated in Diamond Mortgage and Smith. The only difference in the cases is the result. In Diamond Mortgage, the defendants were specifically authorized to engage in real estate transactions, but they had no statutory authorization to engage in mortgage writing. Because the plaintiffs claims concerned mortgage writing, an unauthorized activity, the MCPA exception did not apply. In Smith, the defendant was licensed to sell insurance, and the case concerned insurance. Thus, the exception applied.

 261 Mich App 534, 541; 683 NW2d 200 (2004).

 262 Mich App 434; 686 NW2d 491 (2004).

 MCL 487.3101 et seq.

 239 Mich App 711, 714-715; 609 NW2d 850 (2000).

 The MCPA defines “trade or commerce” as
the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity. “Trade or commerce” does not include the purchase or sale of a franchise, but does include pyramid and chain promotions, as “franchise”, “pyramid”, and “chain promotions” are defined in the franchise investment law, 1974 PA 269, MCL 445.1501 to 445.1546. [MCL 445.902(g).]

 463 Mich 969 (CORRIGAN, C.J., concurring), citing MCL 339.101 et seq.

 266 Mich App 545; 701 NW2d 749 (2005).

 Between Forton and Hartman, in a number of unpublished opinions, the Court of Appeals held that under Smith, residential home building is exempt from the MCPA because of the fact that the conduct was regulated under the MOC. See Winans v Paul and Marlene, Inc, unpub *212 lished opinion per curiam of the Court of Appeals, issued July 8, 2002 (Docket No. 230944), and Shinney v Cambridge Homes, Inc, unpublished opinion per curiam of the Court of Appeals, issued February 22, 2005 (Docket No. 250123). However, these cases were not binding on the Hartman panel. MCR 7.215(C).

 266 Mich App 801 (2005).

 Smith, supra at 465.

 Random House Webster’s College Dictionary (1997). Justice Kelly defines “authorize” as “ ‘to give authority or official power to-, empower.’ ” Post at 228, quoting Random House Webster’s College Dictionary (2001) (emphasis added). “Empower” is defined as “1. to give official or legal power or authority to. 2. to endow with an ability; enable.” Random House Webster’s College Dictionary (1997). Given the definition of “empower” and the use of the preposition “to,” the clear import of this definition is that it applies to the “authorization” of the actor. The definition we choose focuses on the “authorization” of the action, which *213 is also the focus of MCPA § 4(1)(a), which applies to “transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.” Contrary to Justice Kelly’s assertion, we do not focus on the actor. Defendants’ status as residential home builders is relevant only to the extent that such status specifically authorizes them to engage in a particular transaction, i.e., residential home building.

 Random House Webster’s College Dictionary (1997).

 MCL 339.101 et seq.

 1999 AC R 338.1511 through R 338.1555.

38 MCL 339.2401(a) (emphasis added).

 Justice Kelly argues that “[n]othing in [the MOC] explicitly gives residential home builders the power to engage in residential home building.” Post at 229. However, the statute clearly requires most people to obtain a license before acting as a residential home builder. A “license” is “formal permission from a governmental or other constituted authority to do something, as to carry on some business or profession.” Random House Webster’s College Dictionary (1997). Through the licensure requirement, the statute explicitly sanctions, or “specifically authorizes,” qualified individuals to engage in residential home building.
Justice Kelly also states that “[a] transaction or conduct that is actually prohibited by law cannot be deemed to be specifically authorized.” Post at 222 (emphasis in original). In this case, however, the general transaction of residential home building has been specifically authorized. The prohibitions cited by the dissent address specific misconduct in the course of fulfilling that transaction: MCL 339.2411(2)(d) prohibits “[a] willful departure from or disregard of plans,” and MCL 339.2411(2)(m) prohibits “[p]oor workmanship.” Contrary to the dissent, these provisions do not prohibit the transaction of residential home building. To the contrary, they assume the propriety of such transaction. Hence, the dissent errs in concluding that the transaction in this case has been “prohibited by law.” Post at 222 (emphasis omitted).

 MCL 339.2403, listing nine exceptions to the licensure requirement.

 The dissents’ focus on the plaintiffs’ characterization of the conduct is misplaced. While plaintiffs allege that defendants failed to timely complete construction and made multiple misrepresentations, the fact remains that all of the alleged misconduct occurred during the course of the authorized conduct of residential home building.